**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| DAVID SELLERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 25-cv-00035-LKG |
| v. | ) | |
| | ) | Dated:  March 6, 2026 |
| NEWREZ LLC, d/b/a SHELLPOINT | ) | |
| MORTGAGE SERVICING | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

In this putative class action, the Plaintiff, David Sellers, brings claims on behalf of himself and other similarly situated individuals under the Maryland Consumer Protection Act (the "MCPA"), Md. Code Ann., Comm. Law §§ 13-301(14) and 13-303, the Maryland Consumer Debt Collection Act (the "MCDCA"), Md. Code Ann., Comm. Law §14-202, and for declaratory relief, Md. Code Ann., Cts. & Jud. Proc. § 3-406, and unjust enrichment, against the Defendant, Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), arising from Shellpoint's alleged failure to provide monthly statements and attempts to collect a debt with regards to a second mortgage for which the Plaintiff's personal obligations had been discharged in a prior bankruptcy proceeding.  *See generally* ECF No. 4.  The Defendant has moved for judgment on the pleadings with regards to these claims, pursuant to Fed. R. Civ. P. 12(c).  ECF Nos. 19 and 19-1.  The motion is fully briefed.  *See* ECF Nos. 19 , 29 and 30.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendant's motion for judgment on the pleadings (ECF No. 19) and (2) **ENTERS JUDGMENT** in favor of Shellpoint on Counts I, II, III and V of the complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this putative class action, the Plaintiff brings claims on behalf of himself and other similarly situated individuals under the MCPA, the MCDCA and for declaratory relief and unjust enrichment, against Defendant Shellpoint, arising from Shellpoint's alleged failure to provide monthly statements and attempts to collect a debt with regards to a second mortgage for which the Plaintiff's personal obligations had been discharged in a prior bankruptcy proceeding.  *See generally* ECF No. 4.  The Plaintiff asserts the following claims in the complaint: (1) Count I-MCPA § 13-303; (2) Count II-MCDCA § 14-202; (3) Count III-MCPA §13-303(14); (4) Count IV – unjust enrichment; and (5) Count V- declaratory relief.  *Id*. at ¶¶ 60–89.  As relief, the Plaintiff seeks, among other things, restitution, a declaratory judgment and to recover monetary damages from Shellpoint.  *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff David Sellers is a resident of Maryland and a consumer under the MCPA.  *Id*. at ¶ 16.

Defendant Shellpoint is a limited liability company organized under the laws of Delaware. *Id*. at ¶ 17.  Shellpoint is the successor-in interest to Specialized Loan Servicing, LLC  ("SLS"). *Id*.

<u>Background</u>

As background, the Plaintiff purchased his home located in North Potomac, Maryland in 2005.   *Id*. at ¶ 21.  The Plaintiff purchased his home using an 80/20 mortgage, comprising a traditional, first mortgage to cover 80 percent of his home's value and a home equity line of credit ("HELOC") to cover the remaining 20 percent of the home's value ($70,350).   *Id.* at ¶ 22. Specialized Loan Servicing, LLC serviced the HELOC loan.  *Id*. at ¶¶  4–6.

In 2011, the Plaintiff filed for Chapter 7 bankruptcy.  *Id.* at ¶ 23.  During the bankruptcy proceedings, the Plaintiff filed a Statement of Intention indicating that he would retain his interest in his home and continue to pay the first and second mortgages, pursuant to certain agreed-upon terms.   *Id.* at ¶¶ 23–24.

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the Defendant's motion to dismiss, and the memorandum in support thereof, and the Plaintiff's response in opposition thereto.  ECF Nos. 4, 19, 19-1, 29 and 30.

The Plaintiff alleges that, following the bankruptcy discharge in early 2012, he stopped receiving monthly statements on his second mortgage HELOC loan, which had a principal balance of approximately $70,000 at that time. *Id.* at ¶¶ 25–26. And so, the Plaintiff alleges that he did not receive any correspondence from SLS or anyone else regarding his HELOC loan for nearly a decade thereafter. *Id.* at ¶ 27.

The Plaintiff alleges that he assumed that the HELOC loan was no longer an independent debt obligation. *Id.* at ¶ 28. But, in 2022, he received a foreclosure notice from SLS informing him that the HELOC loan was in default and that he owed more than $87,000 in interest and fees that had accumulated since the bankruptcy discharge. *Id.* at ¶ 29. Given this, the Plaintiff alleges that SLS represented to him, and to other similarly situated consumers, that he owed retroactive interest and fees on the HELOC loan, despite the fact that SLS had failed to send him monthly statements as required by federal law. *Id.* at ¶¶ 31–32.

The Plaintiff also alleges that SLS threatened to foreclose on his home if he did not pay the inflated amounts. *Id.* at ¶ 33. And so, the Plaintiff entered negotiations to modify the HELOC loan and avoid foreclosure. *Id.* at ¶ 34. In this regard, the Plaintiff alleges that SLS continued to send him correspondence regarding the interest and fees owed during these negotiations. *Id.* at ¶¶ 35 and 36. The Plaintiff also alleges that he relied upon SLS's false representations that he owed the inflated amounts in deciding to sign the modification agreement for the HELOC loan in October 2022. *Id.* at ¶ 37. And so, the Plaintiff alleges that, but for SLS's false representations, he would not have agreed to the loan modification agreement. *Id.* at ¶ 38.

In May 2024, Shellpoint took over the servicing of the HELOC loan after it merged with SLS. *Id.* at ¶ 39.

The Plaintiff's Allegations

The Plaintiff asserts five claims against Shellpoint in the complaint. First, in Count I of the complaint, the Plaintiff asserts a MCPA claim under Md. Code Ann., Comm. Law § 13-303, on behalf of himself and the following class (the "Modification Class"):

> All individuals who (1) obtained an open- or closed-end mortgage loan for a property that Shellpoint's records indicate is a non-investment property in Maryland; (2) had that debt discharged during a Chapter 7 bankruptcy and did not surrender the property; (3) did not receive statements from Specialized Loan Servicing, LLC for any period after the discharge; and (4) entered into a modification agreement with SLS in the past three years that

> included interest and fees assessed for the periods during which they
> did not receive monthly statements.

ECF No. 4 at ¶¶ 43; *see* ECF No. 4 at ¶¶ 60–66.  Specifically, the Plaintiff alleges that Shellpoint and SLS violated Sections 3-303(1) and 13-303(5) of the MCPA, which prohibit any "person" from "engag[ing] in any unfair, abusive, or deceptive trade practice . . . in: (1) the sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services; [or] (5) the collection of consumer debts."  Md. Code Ann., Com. Law § 13-303; *Id.* at ¶ 61.  The Plaintiff alleges that Shellpoint and SLS violated these provisions, by deceiving him and the class members into entering loan modifications based upon the false representation that they owed tens of thousands in additional interest and fees, while threatening foreclosure if they did not pay the inflated amounts.  *Id.* at ¶¶ 61–63.  The Plaintiff also alleges that Shellpoint continues to violate these provisions by sending monthly statements that misrepresent that he and the class members owe the inflated amounts.  *Id.* at ¶ 64.  And so, the Plaintiff seeks to recover: (1) the lost equity from the inflated balances on the secured second mortgage debts; (2) the payments made on the modifications that SLS and Shellpoint deceptively induced; (3) emotional distress damages; and (4) his attorney's fees.  *Id.* at ¶¶ 65–66.

In Count II of the complaint, the Plaintiff asserts violations of the MCDCA on behalf of himself and the following class (the "Debt Collection Class"):

> All individuals who (1) obtained an open- or closed-end mortgage loan for a property that Shellpoint's records indicate is a non-investment property in Maryland; (2) had that debt discharged during a Chapter 7 bankruptcy and did not surrender the property; (3) did not receive statements from Specialized Loan Servicing, LLC for any period after the discharge; (4) received correspondence from SLS stating that the individuals owed interest and fees assessed for the period during which they did not receive monthly statements.

ECF No. 4 at ¶¶ 44; *see* ECF No. 4 at ¶¶ 67–74.  Specifically, the Plaintiff alleges that Shellpoint and SLS violated the MCDCA, by collecting, and attempting to collect and/or threatening to collect, retroactive interest and fees for periods in which no statements were sent to the class members, in violation of Section 14-202(8) of the MCDCA, which prohibits debt collectors from making any "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist."  *Id.* at ¶ 68.  In this regard, the Plaintiff alleges that SLS sent correspondence to Plaintiff and the class members claiming that it could collect interest and fees on closed or open-end mortgages for periods in which no statements were

4

sent, even though SLS knew from federal regulations that it could not collect such interest and fees. *Id.* at ¶ 69. And so, the Plaintiff contends that SLS and Shellpoint violated the MCDCA, because they constitute "collectors" under the MCDCA. *Id.*

In Count III of the complaint, the Plaintiff brings a claim under Section 13-301(14) of the MCPA claim on behalf of the Debt Collection Class, based upon the aforementioned alleged violation of the MCDCA. *Id.* at ¶¶ 75–79. In Count IV of the complaint, the Plaintiff asserts an unjust enrichment claim on behalf of himself and the Modification Class. *Id.* at ¶¶ 80–84.

Lastly, in Count V of the complaint, the Plaintiff seeks declaratory relief on behalf of the Modification Class, declaring that the interest and fees assessed for periods in which no statements were sent are unenforceable and/or waived and cannot be collected. *Id.* at ¶¶ 85–89.

### B.    Procedural Background

The Plaintiff commenced this putative class action in the Circuit Court of Montgomery County, Maryland on October 9, 2024. ECF Nos. 1 and 4. On January 3, 2025, the Defendants removed the case to this Court. *Id.*

The Defendants answered the complaint on January 10, 2025. ECF No. 6. On June 16, 2025, the Defendants filed a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), and a memorandum in support thereof. ECF No. 19. On October 17, 2025, the Plaintiff filed a response in opposition to the Defendant's motion. ECF No. 29. On November 11, 2025, the Defendant filed a reply brief. ECF No. 30.

The Defendant's motion for judgment on the pleadings having been fully briefed, the Court resolves the pending motion.

### III.   LEGAL STANDARDS

### A.    Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard of review applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). And so, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion for judgment on the pleadings, the Court may consider the

5

pleadings, and any materials referenced in or attached to the pleadings, which are incorporated by reference. *See* Fed. R. Civ. P. 10(c); *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). The Court also may consider "matters of which a court may take judicial notice," such as public records. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (a court may consider documents attached to a motion for judgment on the pleadings so long as those documents are "integral to the complaint" and authentic.).

### B.    The MCPA

The Maryland Consumer Protection Act ("MCPA") prohibits "unfair . . . or deceptive trade practice[s]." Md. Code Ann., Com. Law § 13-303. Under Maryland law, a private party bringing a claim under the MCPA must demonstrate: (1) an unfair or deceptive practice or misrepresentation; (2) that is relied upon; and (3) causes them actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citation omitted).

### C.    The MCDCA

The Maryland Consumer Debt Collection Act ("MCDCA") prohibits 11 categories of conduct relating to debt collection, including prohibiting a debt collector from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. *See* Md. Code Ann., Com. Law § 14-202(1)–(11). This Court has held that, to prove a MCDCA claim, a plaintiff must show that: (1) the defendant did not possess the right to collect the amount of debt sought and (2) the defendant attempted to collect the debt knowing that they lacked the right to do so. *See Pruitt v. Alba Law Grp., P.A.*, No. 15-0458, 2015 WL 5032014, at *3 (D. Md. Aug. 24, 2015).

### D.    The Truth-in-Lending Act

Congress enacted the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, in 1968 to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364–65 (1973). The TILA requires, among other things, that lenders "clearly and conspicuously provide a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit transaction." *Watkins v. SunTrust Mortgage, Inc.*, 663 F.3d 232, 234 (4th Cir. 2011) (quoting 15 U.S.C. § 1601(a)). Creditors are also required "to provide borrowers with clear and accurate

6

disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrowers' rights" under the TILA. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); *see generally* 15 U.S.C. §§ 1601–1667f. Relevant to this dispute, Section 1638(f) of the TILA provides that: "The creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement" containing information such as the remaining principal, the current interest rate, a description of late payment fees, and specific contact information through which the obligor can obtain more information about the mortgage. 15 U.S.C. §§ 1638(f); *see also* 12 C.F.R. § 1026.41(a)(2) ("A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement.").

The TILA's disclosure requirements apply only to creditors and their assignees. *Sizer v. Oshinnaiye*, No. 19-569, 2020 WL 263493, at *12 (D. Md. Jan 17, 2020). And so, "[t]he only parties who can be liable for [TILA] violations are the original creditor and assignees of that creditor." *Id*; *see also* 15 U.S.C. §§ 1640 and 1641.

## IV.    LEGAL ANALYSIS

Shellpoint has moved for judgment on the pleadings in this putative class action, pursuant to Fed. R. Civ. P. 12(c), upon the following grounds: (1) the Plaintiff's MCPA and MCDCA claims in Counts I, II and III of the complaint fail as a matter of law, because these claims are predicated upon an alleged time-barred and non-existent TILA violation; (2) the Plaintiff's unjust enrichment claim also fails, because an express contract governs the same subject matter; (3) the Plaintiff's declaratory relief claim in Count V of the complaint similarly fails, because there is no case or controversy in this case; and (4) the class claims in this putative class action must also fail, because no class member can assert a viable claim. ECF No. 19-1 at 4–12. And so, Shellpoint requests that the Court grant its motion for judgment on the pleadings and enter judgment in its favor on all claims in this case. *Id*. at 12.

In his response in opposition to Shellpoint's motion, the Plaintiff counters that judgment on the pleadings is not warranted in this case, because: (1) the complaint alleges independent violations of the MCPA and MCDCA that are not based upon the TILA; (2) the complaint states an unjust enrichment claim, because the subject matter of this claim is not covered by any contract and, even if covered, the complaint alleges facts to show fraud and/or bad faith by Shellpoint; (3) the complaint states a declaratory relief claim, because a declaratory judgment would address the ongoing dispute about the amounts owed under the Plaintiff's loan

7

modification agreement; and (4) there is no basis to dismiss the class claims, because the Plaintiff states plausible claims in the complaint.  ECF No. 29 at 11–19.  And so, the Plaintiff requests that the Court deny Shellpoint's motion.  *Id*. at 19.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiff does not state plausible MCPA and MCDCA claims in this case, because these claims are based upon Shellpoint's alleged violation of the TILA and its implementing regulations, and it is undisputed that TILA does not apply to Shellpoint.  The complaint also makes clear that the subject matter of the Plaintiff's unjust enrichment claim is covered by the HELOC loan, Statement of Intention and the loan modification agreement at issue in this case.  But the Plaintiff may be able to show fraud and/or bad faith in the formation of these contracts by amending the complaint.

In addition, the Plaintiff cannot seek declaratory relief, based upon his MCPA and MCDCA claims, because of the legal deficiencies with these claims.  Lastly, the Plaintiff's class claims, based upon the alleged MCPA and MCDCA violations and related declaratory relief are also not plausible, because his MCPA and MCDCA claims are not plausible.  And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendant's motion for judgment on the pleadings (ECF No. 19); and (2) ENTERS JUDGMENT in favor of the Defendant on Counts I, II, III and V of the complaint.

### A.    The Plaintiff's MCPA And MCDCA Claims Fail As A Matter Of Law

As an initial matter, Shellpoint argues with persuasion that the Plaintiff's MCPA and MCDCA claims in Counts I, II and III of the complaint must fail as a matter of law, because these claims are predicated upon an alleged violation of the Truth-in-Lending Act and Shellpoint cannot be held liable under the TILA.  Section 1638(f) of the TILA provides that: "[t]he creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement" containing information such as the remaining principal, the current interest rate, a description of late payment fees, and specific contact information through which the obligor can obtain more information about the mortgage.  15 U.S.C. §§ 1638(f); *see also* 12 C.F.R. § 1026.41(a)(2) ("A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement.").  But the TILA's disclosure requirements apply only to creditors and their assignees.  *Sizer v. Oshinnaiye*, No. 19-569, 2020 WL 263493, at *12 (D. Md. Jan 17, 2020). Given this, "[t]he only parties who can be liable for [TILA] violations are the original creditor and assignees of that creditor."  *Id*; *see also* 15 U.S.C.

8

§§ 1640 and 1641. And so, this Court has held that a mortgage servicer cannot be held liable under the TILA, because it is not a creditor under that statute. *Richards v. NewRez LLC*, 20-1282, 2021 WL 1060286, at *7 (D. Md. Mar. 18, 2021); *Mbongo v. Specialized Loan Servicing, LLC*, No. 15-2941, 2016 WL 8671841, at *5–6 (D. Md. June 24, 2016).

In this case, there is no dispute that Shellpoint and its predecessor-in-interest SLS were the servicers of the Plaintiff's HELOC loan, rather than the owners of that loan. ECF No. 19-1 at 11; ECF No. 30 at 1–6. Given this, there can be no genuine dispute that Shellpoint cannot be held liable under the TILA.

The Court also agrees with Shellpoint that the Plaintiff's MCPA and MCDCA claims in this putative class action are predicated upon violations of the TILA. Notably, in Count I of the complaint, the Plaintiff alleges that SLS violated the MCPA by "actively [concealing] the interest that it claimed was accruing on [his] and the Modification Class Members' loans by *deliberately withholding monthly statements* that would have allowed Plaintiff and the Modification Class Members to avoid accumulation of debt that SLS now claimed they owed." ECF No. 4 at ¶ 63 (emphasis added). The Plaintiff also alleges in Count II of the complaint that Shellpoint violated the MCDCA, because SLS "knew from the plain language of the regulations that it did not have the right to collect interest and fees for periods in which *it failed to send monthly statements* to the Plaintiff and the Debt Collection Class." *Id*. at ¶ 69 (Emphasis supplied.). The Plaintiff similarly alleges in Count III of the complaint that the aforementioned MCDCA violation constitutes a *per se* violation of the MCPA. *Id*. at ¶ 77. And so, the complaint makes clear that the Plaintiff's MCPA and MCDCA claims are predicated upon SLS's alleged violation of an obligation to provide the Plaintiff with monthly mortgage statements under the TILA and its implementing regulations.

As several courts have recognized when considering similar claims, the Plaintiff cannot bring a claim under the TILA under the facade of challenging a violation of other consumer protection laws. *See, e.g.*, *Linderman v. NewRez LLC d/b/a Shellpoint Mortgage Servicing, et al.,* No. 25 C 4271, 2025 WL 3037795, at * 3–4 (N.D. Ill. Oct. 31, 2025). This is especially so here, because there is no dispute that the Plaintiff could not independently bring his TILA claim against Shellpoint.

The Plaintiff also points to no obligation under either the MCPA or the MCDCA for SLS or Shellpoint to send him monthly mortgage statements and the Court is aware of no such

9

obligation.  ECF No. 29.  Nonetheless, the Plaintiff argues that his MCPA and MCDCA claims raise independent violations of those statutes, because Shellpoint made "misrepresentations" about the amounts owed under the HELOC loan in correspondence sent to him.  ECF No. 29 at 13–14.  The complaint makes clear, however, that the Plaintiff contends that Shellpoint violated the MCPA and MCDCA, because it had an obligation under the TILA to send him such monthly statements and failed to do so.  ECF No. 4.

The Plaintiff cannot rely upon the MCPA and the MCDCA to enforce an obligation arising under the TILA.  And so, the Court GRANTS Shellpoint's motion for judgment on the pleadings with regards to these claims.  Fed. R. Civ. P. 12 (c).

B.    **The Court Grants The Plaintiff Leave To Amend His Unjust Enrichment Claim**

Shellpoint's argument in support of its motion for judgment on the pleadings with respect to the Plaintiff's unjust enrichment claim is less convincing.  As this Court has held, "an unjust enrichment claim cannot proceed where an express contract between the parties governs the subject matter of the claim." *Hillman v. Flagstar Bank, FSB*, No. 8:20-CV 02486-PX, 2021 WL 3681155, at *4 (D. Md. Aug. 19, 2021).  In this case, the complaint makes clear that there is an express contract that governs the parties' obligations regarding the repayment of the HELOC loan.  Notably, the Plaintiff alleges in the complaint that he entered into a "80/20 mortgage structure" agreement to finance the purchase of his home, with the HELOC loan covering 20 percent of the home's value.  ECF 4 at ¶ 22.  The Plaintiff also alleges that he filed a Statement of Intention during his Chapter 7 bankruptcy proceedings indicating that he would retain an interest in his home and continue to make payments on both the first mortgage and the HELOC loan, "pursuant to agreed-upon terms." *Id*. at ¶ 24.  In addition, the Plaintiff alleges in the complaint that he entered into a loan modification agreement that modified the payment terms of the HELOC loan. *Id*. at ¶¶ 34 and 36–37.

Given this, the factual allegations in the complaint show that there is an express agreement between SLS or Shellpoint and the Plaintiff regarding the HELOC loan regarding the payment amounts and interest due under that loan. *Ramos v. Bank of Am.*, N.A., No. 11–3022, 2012 WL 1999867, at *6 (D. Md. June 4, 2012) ("Because the Promissory Note expressly defines the parties' obligations under the initial loan, an unjust enrichment claim will not lie on that basis.").  But the Plaintiff correctly observes that Maryland law permits a party to assert an unjust

enrichment claim, under circumstances where there is an express contract. *County Com'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 n. 9 (Md. 2000).

In this regard, a careful reading of the complaint shows that the Plaintiff fails to allege sufficient facts to support a fraud and/or bad faith exception in this case. Notably, there are insufficient factual allegations in the complaint to show that SLS or Shellpoint engaged in fraudulent conduct with the level of particularity required under Rule 9(b). ECF No. 4 at ¶¶ 13, 63 and 69 (generally alleging that SLS: (1) deceived Plaintiff into agreeing to a loan modification; (2) concealed the amount of interest accruing on the HELOC loan; and (3) later sent correspondence claiming interest and fees for periods during which no monthly statements were provided); *see also* Fed. R. Civ. P. 9(b). There are also no factual allegations in the complaint to show that Shellpoint acted in bad faith. *See generally id.*

The Plaintiff may, however, be able to cure this deficiency by amending the complaint. Given this, the Court will allow the Plaintiff to amend the complaint to provide facts to show fraud and/or bad faith in the formation of the HELOC loan. Fed. R. Civ. P. 15(a)(2). And so, the Court DENIES Shellpoint's motion with respect to the Plaintiff's unjust enrichment claim WITHOUT PREJUDICE.

### C.    The Court Dismisses Certain Declaratory Relief And Class Claims

As a final matter, the Court dismisses the Plaintiff's claim for declaratory relief in Count V of the complaint, to the extent that this claim is based upon the Plaintiff's MCPA and MCDCA claims. Declaratory relief is not an independent cause of action and the underlying MCPA and MCDCA claims in this case fail as a matter of law. *Fare Deals, Ltd. v. World Choice Tracel.com, Inc.*, 180 F. Supp. 2d 678, 682 n. 1 (D. Md. 2001).

The Court also dismisses the class claims associated with the Plaintiff's MCPA and MCDCA claims in Counts I, II and III of the complaint. Lastly, the Court declines to dismiss the Modification Class claim for unjust enrichment in Count IV of the complaint, because the Court declines to dismiss the Plaintiff's unjust enrichment claim at this stage of the litigation. And so, the Court GRANTS-in-PART and DENIES-in-PART Shellpoint's motion on these final claims.

### V.    CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendant's motion for judgment on the pleadings (ECF No. 19); and

(2) **ENTERS JUDGMENT** in favor of Shellpoint on Counts I, II, III and V of the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge